IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  11-cv-00399-LTB-MEH

LAWRENCE ADAMS,

       Plaintiff,

v.

DAVID SOYKA, in his individual capacity, and the TOWN OF GREEN MOUNTAIN FALLS, through its Board of Trustees,

       Defendants.

---

## ORDER

---

This matter is before me on Defendants David Soyka and the Town of Green Mountain Falls' Partial Motion to Dismiss **[Doc #10]**.  Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff Lawrence Adams' excessive force and false arrest claims against Soyka and his *Monell* liability claim against the Town.  After consideration of the parties' arguments, and for the reasons stated below, I DENY Defendants' motion.

### I. Background

Plaintiff's action for damages alleges five violations of 42 U.S.C. § 1983.  His first four claims  are  against Soyka: (1) unlawful entry, search, and seizure; (2) unlawful stop and seizure; (3) excessive force; and (4) false arrest.  His fifth claim is that the Town is liable for Soyka's excessive force as his employer–a *Monell* claim.  Plaintiff asserts that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  A brief synopsis of the facts is all that is necessary.

1

Plaintiff's claims stem from a June 5, 2009, incident between him and Defendant Soyka.  On that day, Soyka entered Plaintiff's property to contact him and serve him with a citation for violating motor vehicle laws, which Plaintiff claims Soyka had no right to do.  Plaintiff told Soyka that he had no right to be on his property and that he must leave.  Soyka returned to his work vehicle to confirm that the plates on Plaintiff's vehicle had expired.  He then re-entered Plaintiff's property and approached Plaintiff's home.  A verbal confrontation ensued which precipitated Soyka entering Defendant's home, ordering Plaintiff to hang-up the phone, and grabbing the phone from Plaintiff and hanging it up when Plaintiff refused to do so.  This is the basis for Plaintiff's unlawful entry, search, and seizure claim.

The confrontation escalated, and Plaintiff walked out of his home.  Soyka followed.  As Plaintiff continued walking away from his home, Soyka tried to physically stop him by placing a hand on his shoulder, which Plaintiff claims constituted an unlawful stop and seizure.  When Soyka placed his hand on Plaintiff's shoulder, Plaintiff attempted to punch him.  In response to the punch, Soyka placed Plaintiff in an arm bar–a physical technique used to subdue the subject.  Plaintiff then punched Soyka.  While Soyka continued applying the arm bar to force Plaintiff to the ground, Plaintiff's elbow dislocated.  Plaintiff's knees then buckled, and he dropped to the ground.  Plaintiff asserts that the arm bar and accompanying physical force was excessive–his third claim.  Soyka immediately requested medical assistance for Plaintiff.  Emergency personnel arrived and took Plaintiff to a Colorado Springs hospital.  Plaintiff was taken and booked into El Paso County Jail after his hospital discharge.  Sometime during this incident Soyka arrested Plaintiff without a warrant. Plaintiff alleges that his arrest was unlawful.

On June 26, 2009, the El Paso County District Attorney's Office filed a complaint levying

2

three charges against Plaintiff for his conduct during the arrest: second degree assault, resisting arrest, and obstructing a police officer.

Then, on May 19, 2010, the District Attorney filed an amended complaint that added a harassment charge.  The harassment charge alleged that during the incident, Plaintiff unlawfully struck, shoved, kicked, touched, or subjected Soyka to physical contact with the intent to harass, annoy, or alarm him in violation of Colo. Rev. Stat. 18-9-111(1)(a).  That same day, Plaintiff executed a plea agreement wherein he entered an *Alford* plea to the harassment charge in exchange for the District Attorney dismissing the other charges.  In furtherance of his *Alford* plea, Plaintiff and the District Attorney executed a Stipulation for Deferred Judgment and Sentence and Court Order (the "Stipulation") pursuant to Colo. Rev. Stat. § 18-1.3-102(2).   Under the Stipulation and consistent with the statute, Plaintiff agreed to abide by certain conditions for six months, and the district court would not impose a sentence or enter a judgment of conviction provided he met those conditions.  Plaintiff successfully completed the Stipulation.  Accordingly, pursuant to Colo. Rev. Stat. § 18-1.3-102(2), Plaintiff's *Alford* plea was withdrawn, and the district court dismissed the charge and case with prejudice.  Plaintiff filed this suit months later.

## II. Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint  "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 at 556). When deciding a motion to

3

dismiss under the rule, the court must assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). Legal conclusions, however, do not receive this treatment. *Iqbal*, 129 S.Ct. at 1950. Importantly, while utilizing this standard of review, a court may take judicial notice of matters of public record without converting Defendants' motion into one for summary judgment under Rule 56. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004); *see also Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001). Here, noteworthy public records are those relating to the June 5, 2009, incident and the Stipulation.

### III. Discussion

### A.

Defendants argue that *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny bars Plaintiff's excessive force, false arrest, and *Monell* claims (collectively, the "Claims"). (Defendants' motion leaves untouched Plaintiff's first two claims.) In *Heck,* a state prisoner challenged the constitutionality of his conviction in a § 1983 suit for damages. The Court held that

> [I]n order to recover damages for allegedly unconstitutional conviction or impeachment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . . A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87. By contrast, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgement against the plaintiff, the action should be allowed to proceed . . . ." *Id.* at 487. The *Heck* doctrine thus requires

the trial court to "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* "The purpose behind *Heck* is to prevent litigants from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions." *Muhammad v. Close*, 540 U.S. 749, 751-52 (2004).

Defendants argue that Plaintiff's excessive force and false arrest claims are *Heck* barred because Plaintiff's *Alford* plea to the harassment charge and his Stipulation constitute the requisite "conviction or sentence."   And if those two claims are barred, Defendants assert, so would Plaintiff's *Monell* claim because it is predicated upon Plaintiff's excessive force claim.

Plaintiff proffers three rejoinders.  First, *Heck* and its progeny require an "extant conviction" to apply the *Heck* bar.   No such conviction exists here.   Second, assuming, *arguendo*, that Defendant's Stipulation constitutes an extant conviction, judgment for Plaintiff on the Claims would not necessarily impugn its validity.   Third, habeas corpus relief is not actually available to Plaintiff.

## B.

*Heck* and the parties' arguments elucidate that I must first decide this issue: whether a plaintiff who files suit *after* successfully completing a deferred judgment and sentence pursuant to Colo. Rev. Stat. § 18-1.3-102(2), which resulted in a withdrawal of his *Alford* plea and a dismissal of the criminal charge against him, has an "outstanding judgment" or "conviction or sentence" under *Heck. See Wallace v. Kato*, 549 U.S. 384, 393 (2007) ("[T]he *Heck* rule . . . is called into play only when there exists 'a conviction or sentence that has *not* been invalidated,' that is to say, an 'outstanding criminal judgment.' "); *see also Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007) ("The starting point for the application of *Heck* then is the existence of an underlying

5

conviction or sentence that is tied to the conduct alleged in the § 1983 action."). For if I answer in the negative, *Heck* is inapposite, and addressing Defendants' remaining arguments is obviated because they postulate *Hecks*'s application. Alternatively, if I answer in the affirmative, I would then need to examine the remaining contentions regarding a *Heck* bar. I state at the outset that whether *Heck* would bar the Claims had Plaintiff brought them before completing his Stipulation is an issue I need not and do not decide, as that is not the factual situation before me. For the reasons below, I conclude that no outstanding judgment, conviction, or sentence exists here. *Heck* therefore does not apply, and, consequently, it cannot bar the Claims. I accordingly deny Defendants' motion.

Defendants assert that this issue is unsettled in the Tenth Circuit. They appeal to other circuits deciding that deferred adjudications qualify as a conviction or sentence for purposes of the *Heck* bar and request I adopt that position. *See DeLeon v. Corpus Christi*, 488 F.3d 649 (5th Cir. 2007); *Gilles v. Davis*, 427 F.3d 197 (3rd Cir. 2005); *Roesch v. Otarola*, 980 F.2d 850 (2nd Cir. 1992). Plaintiff counters that, contrary to Defendants' assertion, the Tenth Circuit settled this issue in Plaintiff's favor in *Vasquez Arroyo v. Starks*, 589 F.3d 1091 (10th Cir. 2009).

*Vasquez* examined whether the *Heck* bar applied to a Kansas state pre-trial diversion program–that is, whether a diversion agreement was an "outstanding judgment" or "conviction or sentence" under *Heck*. 589 F.3d 1091. The court held that it was not. It found that under Kansas law, a " '[d]iversion is . . . a means to avoid a judgment of criminal guilt,' the opposite of a conviction in a criminal action." *Id.* at 1095 (quoting *State v. Chamberlain*, 120 P.3d 319, 323 (Kan. 2005)). Indeed, "the diversion agreements resulted in a deferred prosecution of the offenses at issue." *Id.* "As a consequence" the court stated, "under Kansas law there are no 'outstanding

judgments," or 'convictions or sentences' against Mr. Vasquez . . . ." *Id.* The Tenth Circuit noted

the disagreement over whether the *Heck* bar applies to pre-trial programs similar to diversion

agreements. *Id.* (citing cases on both sides). In its judgment, however, "holding that the *Heck* bar

applies to pre-trial diversions misses the mark." *Id.* This is because, *Vasquez* explained, "[t]he

Supreme Court in *Wallace* made clear that the *Heck* bar comes into play only when there is an actual

conviction." *Id.* (citing *Wallace*, 549 U.S. at 393).

  *Vaqsuez* did not examine the exact question before me. I nevertheless conclude that applying

its reasoning and holding to the instant case yields the conclusion that the *Heck* bar is inapposite.

I first apply *Vasquez*'s approach. The *Vazquez* court looked to Kansas law to ascertain whether the

diversion program was an "outstanding judgment." Consonant with this approach, I turn to

Colorado law to examine its deferred judgment and sentence program. The statute pursuant to

which Plaintiff entered his Stipulation provides the following:

> Prior to entry of a plea of guilty to be followed by deferred judgment and sentence,
> the district attorney, in the course of plea discussion . . . is authorized to enter into
> a written stipulation, to be signed by the defendant, the defendant's attorney of
> record, and the district attorney, under which the defendant is obligated to adhere to
> such stipulation. . . Upon full compliance with such conditions by the defendant, the
> plea of guilty previously entered shall be withdrawn and the charge upon which the
> judgment and sentence of the court was deferred shall be dismissed with prejudice.
> Such stipulation shall specifically provide that, upon a breach by the defendant of
> any condition regulating the conduct of the defendant, the court shall enter judgment
> and impose sentence upon such guilty plea.

Colo. Rev. Stat. §18-1.3-102(2). A plain reading of the statute suggests that *Heck* does not bar the

Claims. By its terms, after the successful completion of a deferred judgment and sentence, there is

no guilty plea, charge, outstanding judgment, conviction, or sentence. Thus, Plaintiff comes before

this Court like the plaintiff in *Vasquez*, without the underlying "outstanding judgment" or

"conviction or sentence" that *Heck* requires. *See Vasquez*, 589 F.3 at 1095. And as *Vasquez* stated,

this is "the opposite of a conviction in a criminal action." *Id.*

Colorado case law bolsters my reading.  Indeed, the Stipulation was "technically not a sentence." *People v. Carbajal*, 198 P.3d 102, 106 (Colo. 2008).  Additionally, after successfully completing the terms of a deferred judgment and sentence, Plaintiff is "no longer [] 'convicted' " *Hafelfinger v. Dist. Ct. In and For the Eighth Jud. Dist.*, 674 P.2d 375, 377 n.3 (Colo. 1984).  Nor is there an "outstanding judgment" because no judgment was entered. *See Schubert v. People*, 698 P.2d 788, 791 n.4 (Colo. 1985); *Carbajal*, 198 P.3d at 105.  Thus, when Plaintiff filed his complaint, like the plaintiff in *Vasquez*, he did not have an "actual conviction" or "outstanding judgment." *See Vasquez*, 589 F.3d at 1095.  The *Heck* bar is therefore inapplicable.

I also find that this situation is sufficiently analogous to *Vasquez* such that its holding guides my conclusion.  To be sure, the Kansas program in *Vasquez* was a deferred prosecution program vis-à-vis the deferred judgment and sentence program here.  But the programs are similar. The Tenth Circuit found that Kansas' diversion program was "a means to avoid a judgment of criminal guilt." *Vasquez*, 589 F.3d at 1095.  So is Colorado's deferred judgment program.  Under the program, no "judgment" is entered if the defendant successfully completes it. *See* Colo. Rev. Stat. §18-1.3-102(2) ("Upon full compliance with such conditions by the defendant . . . the charge upon which *the judgment* and sentence of the court *was deferred* shall be dismissed with prejudice.") (emphasis added); *Schubert*, 698 P.2d at 791 n.4  ("A deferred judgment and sentence . . . permits a defendant to plead guilty *without the entry of a judgment of conviction* . . . .") (emphasis added).  Moreover, like the Kansas program, successful completion of the Colorado program results in no outstanding judgment, sentence, or conviction.  I thus conclude that while the form of the programs may be different, their substance and ultimate results are sufficiently similar such that *Vasquez*'s holding

dictates that Plaintiff does not currently have an outstanding judgment.

Defendants argue that *Vasquez* does not control because Plaintiff pled guilty to the harassment charge via his *Alford* plea, whereas the diversion program in *Vasquez* did not require any plea. *See Vasquez, supra,* and *Chamberlain,* 120 P.3d at 323 ("No defendant shall be required to enter any plea to a criminal charge as a condition for diversion."). I find three problems with this argument. First, it is dubious whether Plaintiff's *Alford* plea, in this situation, is tantamount to a traditional guilty plea because a deferred judgment and sentence is "an *alternative* to the traditional plea of guilty." *See Schubert,* 698 P.2d at 791 n.4 (emphasis added). It is thus opaque whether the consequences flowing from a traditional guilty plea, if any, would result here with respect to the *Heck* bar. Second, even if *Vasquez's* holding does not control because of factual disparities, the case's approach to deciding the issue before me is still apposite. As discussed above, that approach produces the conclusion that no outstanding judgment exists.

Third, I reiterate that I do not decide whether a conviction, outstanding judgment, or guilty plea existed *while* Plaintiff completed his Stipulation. Rather, I must decide whether one exists now. By the terms of Colorado's deferred judgment statute and its case law, no guilty plea–*Alford* or otherwise–existed at the time Plaintiff filed his complaint or exists today. It was withdrawn upon Plaintiff's successful completion of the Stipulation, which predates this suit. *See* Colo. Rev. Stat. § 18-1.3-102(2) ("Upon full compliance with such conditions by the defendant, the plea of guilty previously entered shall be withdrawn . . . ."); *see also Carbajal,* 198 P.3d at 106 ("[I]f a defendant serves four years of deferred judgment supervision for a felony without revocation or permissible extension, his guilty plea must be withdrawn . . . .").

Importantly, Plaintiff's charge was dismissed. In *Butler, supra,* a plaintiff brought a § 1983

action for damages based on an officer's conduct during an arrest resulting in two burglary charges. 482 F.3d 1277.  The plaintiff there was not convicted on those two charges because they were dismissed as part of a plea agreement in which the plaintiff pled guilty to other unrelated charges. *Id.* at 1280.  The *Benton* court held that *Heck* did not bar the plaintiff's § 1983 action because, as a result of the dismissal, "[t]here [was] no related underlying conviction therefore that could be invalidated by [the plaintiff's] § 1983 action."  *Id.* at 1280.  Here, Plaintiff's harassment charge was dismissed with prejudice.  I thus find myself in the same situation as the *Benton* court–absent an underlying conviction.  *Benton* therefore aids my conclusion that the *Heck* bar is inapplicable.

I underscore Supreme Court and Tenth Circuit jurisprudence emphasizing that the underlying conviction, sentence, or outstanding judgment must be both concrete and extant.  The Tenth Circuit requires an "actual conviction," *Vasquez*, 589 F.3d at 1095, meaning one that has not been dismissed.  *See Butler*, 482 F.3d at 1280.  Likewise, the Supreme Court speaks of criminal convictions that are "in existence."  *Wallace*, 549 U.S. at 393.  To this end, the Supreme Court has been especially leery of enlarging the *Heck* bar's circumference to encompass "anticipated future convictions."  *Id.*  While Defendants do not make this exact request, they make one akin to it.  They ask that I broaden *Heck*'s temporal reach backwards, to bygone moments during which there existed a formless possible future judgement.  I find that this expansion would not comport with controlling law, and I therefore decline this request.

Because I conclude that no extant conviction, sentence, or outstanding judgment exists, the *Heck* bar is inapposite.  Accordingly, I decline to address the parties' remaining arguments.

## IV. Conclusion

For the reasons set forth above, IT IS ORDERED that Defendants' Partial Motion to Dismiss **[Doc #10]** is DENIED.


Date: October __14__, 2011 in Denver, Colorado.


                                        BY THE COURT:


                                        ___s/Lewis T. Babcock_____
                                        LEWIS T. BABCOCK, JUDGE